The next case this morning for oral argument is 23-2311, United States v. Anthony Day. Good morning, Mr. Solomon. Good morning. May it please the Court, Ethan Solomon for Defendant Appellant Anthony Day. I am arguing pursuant to Circuit Rule 34H under the supervision of Danielle Hamilton, who is seated at Council Table. The District Court committed structural error when it denied Mr. Day's request for specific unanimity as to which instance of firearms possession the jury was convicting him of. The Court's failure to properly instruct the jury such that some jurors could have convicted on one instance of firearms possession while others could have convicted on another means that Mr. Day cannot be assured that his conviction was properly unanimous. Under Solomon v. Louisiana, the Supreme Court held that verdicts that are not verdicts within the meaning of the Sixth Amendment are not verdicts at all and are therefore structural error. And what is the standard of review we're reviewing? I'm sorry? What standard of review are we using? To review which question? First issue, the issue we're discussing regarding the firearm. That would be de novo review, the denial of a defendant's jury instruction as a matter of law. Okay. And it is a question of law because the question is whether or not the proper unanimity instruction was given. Would we have to overturn our opinion in United States v. Pollock to find for you? I don't believe so, Your Honor. I think that Pollock, the district court was wrong to apply Pollock to the facts of this case because Pollock involved very clearly one set of simultaneously possessed firearms, whereas here we have one potential instance of firearms possession that occurred at the bank and a different separate instance of firearms possession that occurred in the woods. This sounds like a duplicity argument to me. And what I mean by that, in case you don't know, is that the indictment has charged two distinct offenses in one count that should have been charged in two. And that is not something that was raised below. It was not raised below, Your Honor. And the indictment itself may not have been duplicitous at the time that it was issued. The indictment only alleged possession of a firearm. It didn't specifically say, you know, possess the firearm here or here. It really wasn't until the presentation of evidence at trial and the government's closing arguments at trial that this issue of the entirely unconnected. But that wasn't raised. The charging challenge was not raised, that this should have been two separate charges as opposed to one. And it sounds to me that's what you're arguing, that there are two separate possessions here that should have been charged separately. Well, what was raised below was this issue that. Was unanimity. Right, was unanimity and that the jury could have split on which of these potentially separate instances it was convicting on. I guess I'm not sure that trial counsel necessarily knew prior to the sort of conclusion of trial that this was going to be an issue that. Well, he certainly knew before because he knew what the proposed jury instructions were and he knew about both firearms. That was addressed before trial, I believe, in the unanimity. The first request was made before trial. Yes, and I believe that that request was specifically pertaining to just the two simultaneous firearms in the woods. Once you get to closing argument and the government has made extremely clear that the American tactical is completely unconnected to the robbery itself. Then it starts to sound more like it really is two separate instances. And that's what trial counsel raised at the second request for unanimity. Let me ask you a more basic question about Pollack. Okay, because you told us that you think Pollack does not apply. Pollack said, if one juror believed the defendant possessed a rifle, but a different juror believed the defendant possessed a shotgun. Both would still be in agreement that the defendant possessed any firearm, which is the language of 922 G. How is that not the case here? Pollack made that statement in the context of one grouped bundle of firearms. And I think the case that is actually more on point to this set of facts would be a case like Varechia, which this court relied heavily on in its decision in Pollack, where the defendant had several firearms that I believe he had shown to an undercover police officer. And then a separate cache of simultaneously possessed firearms that he then brought that officer to. And those were charged separately because the issue is, is it a bundle of firearms? And yes, in those cases, Pollack is correct that there's no need for specific unanimity. Well, what about Jackson? Because we have the same kind of analysis as Pollack with different facts. You're saying Pollack is distinguished on his facts because it was a bundle of firearms. We don't have that here. Jackson says if half the jurors found that Jackson possessed the gun on July 12th and half found that he possessed it on July 15th, the jury would still be unanimous that he possessed a gun between July 12th and July 15th, which is exactly what the indictment charged. How does that not sound like what happened here? Well, in that case, and I'm not intimately familiar with all of the facts of Jackson, but it sounds like there was an argument made for a continuous possession throughout the time frame in question. And here, not only did the government not argue continuous possession below, they affirmatively stated that at least one of the guns was not continuously possessed throughout. I think that there is perhaps a relatively unique set of facts here, but it is one where we believe that specific unanimity was appropriate. Do you agree if we apply a harmless error analysis that in light of your client's conviction on the brandishing of the firearm during robbery that it would be harmless here? I know you don't agree with the premises of that. You don't think we should apply a harmless error analysis, but if we do, do you agree any error here was harmless? Yes, Your Honor. I think it would be difficult for us to win under a harmless error standard. And do you also realize that this might not impact your client's sentence at all, given the way the sentence was structured, that he received 208 months on the bank robbery and 120 months on the 922G, which ran concurrent and then 84 consecutive? Yes, Your Honor, although the fact that it doesn't necessarily impact his sentence I don't think should influence this court's decision. Not dispositive, I agree. I just want to make sure you understood that. Yes. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Of course. Thank you. Mr. Whalen. May it please the Court. Thank you, Your Honors. Nathaniel Whalen here on behalf of the United States of America. The government properly charged this single count as one continuous incident of possession, and so no unanimity was required, no unanimity instruction to the extent that the court erred and the error was harmless. There was no duplicity challenge, so that argument is waived. I think what the defendant's basically arguing is this was not a continuous course of possession in the 30 minutes that we presented the evidence of trial. We did not waive any argument that this was a continuous course of conduct. We, in fact, argued this case as though we are presenting a 30-minute snapshot of time. We certainly waived any argument that the 924C could rest on the tactical firearm because there was no evidence of the tactical firearm in the bank. However, we're talking about 30 minutes from about the time the defendant goes into the bank until the guns are found, one on top of each other in the exact same location. There was no time in which he could have gotten rid of one gun, no time in which he could have separately acquired one gun unless it was with him. The GPS tracker is actually pretty impressive in this case. It keeps track of where he goes and what speeds from the moment he leaves the bank until he gets there, and it doesn't stop for more than 10 or 15 seconds. So there's no evidence when you look at the factors this court considers, whether it's a continuous course of possession, which is the relevant inquiry. There's no evidence that he separately acquired these firearms, no evidence that at one point he was dispossessed of a firearm and then reacquired it. They were stored in the exact same location. We're talking about a very short temporal proximity. So these were properly charged as a single count. Because it was a single count, no unanimity was required. And a little bit of a loss is how we could even charge these as two separate counts because we have the silver revolver possessed from the moment he comes into the bank until it's on top of the tactical 30 minutes later. I don't think most defendants want those being two separate counts. So one and then 30 minutes later, subjecting them to two potential 15-year penalties, two special assessments. So this was properly charged. No unanimity was required under the case all this court cited. To the extent that there was an error, any error is harmless. Ramos was a case about a non-unanimous verdict. That was where two jurors voted to acquit. That does nothing to undermine Nader,  Nader addressed the argument the defendants were lying on on Sullivan where the defendant, Nader, said this is not a complete verdict because the jury didn't unanimously agree on an omitted element. The Supreme Court said that's not right. It's still subject to harmless error review. But the government also had the option of just using the silver revolver for the brandishing, you know, the 924-E or the 924-C, sorry, or and then just using the American tactical for the 922-G. Why is it you're saying the only other option we had, the defendant wouldn't have won it, which is two separate 922-G counts? Well, Your Honor, I guess we could have rested the 922 on the, sorry, the 922-G on just the tactical, but he did possess the silver revolver in the bank. We don't have to choose between the 924-C or the 922-G. When he picked it up in the bank, he was a felon in possession of any firearm. Just like when he left his DNA on the tactical, he was a felon in possession of a firearm. I'm just saying you could have avoided this analytical confusion that we are now presented with as an argument about unanimity. Sure, we could have, Your Honor, but I don't think we have to choose between one of the firearms when we have simultaneous possession, and the fact that they're on top of one another, the fact that they're found in the exact same location suggests that it was simultaneous possession. What this court has said is that when you have instances like that, that should be a single count. Unless this court has any further questions on either of the issues, we would rest on our briefs and ask that you affirm Mr. Day's conviction. Okay. Thank you, Mr. Whaler. Thank you. Mr. Solomon, rebuttal. Thank you. I just want to respond first briefly to the government's discussion of Nader. To note that Nader was dealing with a very different question as far as what kind of error was at issue, and the Supreme Court even noted in Nader that, quote, it would not be illogical to extend Sullivan, but because the Supreme Court had prior case law already establishing that failure to instruct on an element was not fully fatal to the verdict, it elected not to do so. Here we think that the court would be applying Sullivan to a type of instructional error that post Ramos seems to fall more within its ambit. In Sullivan, the verdict was facially beyond a reasonable doubt under the deficient instruction, and that wasn't good enough. And here, you know, the verdict may have been facially unanimous under what we argue is also a deficient instruction, and similarly should not be good enough. And unless the court has any further questions, we respectfully request that this court reverse. Thank you, Mr. Sullivan. And I know you and the Northwestern Clinic have been appointed to represent your client in this case. Thank you to both you and Ms. Hamilton for taking that representation on. Thank you as well, Mr. Whalen. The court will take the case under advisement.